# UNITED STATES DISTRICT COURT

Eastern District of Kentucky
Southern Division at London

| | | |
|---|---|---|
| Chad McNew | ) | |
|     *Plaintiff* | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| CBCInnovis, Inc. | ) | |
| *d/b/a* Factual Data | ) | |
|     *Defendant* | ) | |
| Serve: | ) | |
|     Corporation Service Company | ) | |
|     421 West Main Street | ) | |
|     Frankfort, KY 40601 | ) | |
| | ) | |
| Equifax Information Services, LLC | ) | |
|     *Defendant* | ) | |
| Serve: | ) | |
|     Corporation Service Company | ) | |
|     421 West Main Street | ) | |
|     Frankfort, KY 40601 | ) | |
| | ) | |
| JPMorgan Chase Bank, N.A. | ) | |
|     *Defendant* | ) | |
| Serve: | ) | |
|     JPMorgan Chase Bank, N.A. | ) | |
|     1111 Polaris Parkway | ) | |
|     Columbus, OH 43240 | ) | |
| | ) | |
| LexisNexis Risk Solutions Inc. | ) | |
|     *Defendant* | ) | |
| Serve: | ) | |
|     CT Corporation System | ) | |
|     306 W Main Street, Suite 512 | ) | |
|     Frankfort, KY 40601 | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

Trans Union, LLC         )
  *Defendant*         )
Serve:            )
  The Prentice Hall Corp. System  )
  421 West Main Street     )
  Frankfort, KY 40601     )
              )
World Finance Company of Kentucky, LLC )
*d/b/a* World Finance Corporation   )
  *Defendant*         )
Serve:            )
  CT Corporation System    )
  306 West Main Street, Suite 512   )
  Frankfort, KY 40601     )
              )

## COMPLAINT and DEMAND FOR JURY TRIAL

### INTRODUCTION

1.  This is a complaint for damages for Defendants' violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA") which was enacted to promote the accuracy, fairness, and privacy of consumer information contained in the files of consumer reporting agencies. The FCRA's purpose is to protect consumers from the willful and/or negligent inclusion of inaccurate information in their credit reports.

### JURISDICTION AND VENUE

2.  Jurisdiction of this court arises under 28 U.S.C. § 1331 and the FCRA at 15 U.S.C. § 1681p. Venue is proper because many of the relevant events affected and/or damaged a consumer living within Laurel County, Kentucky, which is located within this District.

### PARTIES

3.  Plaintiff Chad McNew is a natural person who resides in Laurel County, Kentucky and a "consumer" within the meaning of the FCRA as defined at 15 U.S.C. § 1681a(c).

4.  Defendant CBCInnovis, Inc. d/b/a Factual Data ("CBCInnovis") is a foreign corporation with its principal place of business located at 250 E Broad Street, 18th Floor, Columbus, OH 43215 registered to do business with Kentucky Secretary of State. CBCInnovis is a "consumer reporting agency" within the meaning of the FCRA.

5.      Defendant Equifax Information Services, LLC ("Equifax") is a foreign limited liability company with its principal place of business located at 1550 Peachtree Street NW, Atlanta, GA 30309. Equifax is registered to do business with Kentucky Secretary of State and is a "consumer reporting agency" within the meaning of the FCRA.

6.      Defendant JPMorgan Chase Bank, N.A. ("Chase") is a national bank regulated by the Office of the Comptroller of the Currency whose headquarters is located at 1111 Polaris Parkway, Columbus, OH 43240. Chase is a furnisher of credit information within the meaning of the FCRA.

7.      Defendant LexisNexis Risk Solutions, Inc. ("LexisNexis") is a foreign corporation, with its principal place of business located at 1000 Alderman Drive, Alpharetta, GA 30005 registered to do business with Kentucky Secretary of State and a "consumer reporting agency" within the meaning of the FCRA.

8.      Defendant Trans Union, LLC ("Trans Union") is a foreign limited liability company with its principal place of business located at 555 West Adams, Chicago, IL 60661 registered to do business with Kentucky Secretary of State and a "consumer reporting agency" within the meaning of the FCRA.

9.      Defendant World Finance Company of Kentucky, LLC *d/b/a* World Finance Corporation ("WFC") is a Kentucky limited liability company with its principal place of business located at 108 Frederick Street, Greenville, SC 29607 registered to do business with the Kentucky Secretary of State and a furnisher of credit information within the meaning of the FCRA.

## STATEMENT OF FACTS

10.     Like many of his fellow Americans, Plaintiff Chad McNew ("McNew") Mr. McNew very much would like to qualify for a home loan and other credit and is keenly aware that every error on his credit report negatively impacts his credit score and his ability to obtain credit.

11.     As explained on Bankrate.com, a person's credit score is important to many major life events: including housing, employment, and credit:

> Today's economy runs on credit. If you want to get a mortgage loan for a house or a student loan to pay for college, or if you just want to put your lunch on a credit card, a company is extending credit to you.
>
> Your creditworthiness is defined by your three-digit credit score and is the key to your financial life. Good credit can be the make-or-break detail that determines whether you'll get a mortgage, car loan

or student loan. On the other hand, bad credit will make it more difficult for you to get a credit card with a low interest rate and it will make it more expensive to borrow money for any purpose, says Liz Pulliam Weston, author of "Your Credit Score."

But even if you're not in the market for a loan, good credit can have a major impact, Weston says.

"Your credit information can be a factor in whether or not you can rent a nice apartment, how much you pay for insurance or whether or not you can get a job," she says. Landlords, insurers and employers frequently use credit information as a litmus test to see if the people they are dealing with are reliable and responsible.

Bad credit can suggest you're a risky bet. While bad credit may only show the details of how you deal with debt, some will extrapolate the characteristics from your financial life to other situations and assume that your bad credit implies that you may be just as irresponsible driving a car, taking care of an apartment or showing up for a job, Weston notes.

Good credit can signify that your financial situation—and the rest of your life—is on the right track.[1]

12.     In an effort to improve his credit score and rating, Mr. McNew regularly reviews his credit reports.

13.     On June 25, 2019, October 29, 2019, and January 6, 2020 Mr. McNew applied for a home loan or preapproval for a home loan with Republic State Mortgage ("Republic").

14.     As part of each application, Republic requested, obtained, reviewed and relied on a tri-merged credit report published by Defendant CBCInnovis, Inc. d/b/a Factual Data ("CBCInnovis") as a Bureau Express Trended Credit Data credit report.

15.     The tri-merged report included credit information obtained from Defendant LexisNexis Risk Solutions Inc. ("LexisNexis") and the three major consumer reporting agencies ("CRA's"): Defendant Equifax Information Services, LLC ("Equifax") Experian Information Solutions, Inc. ("Experian"), and Defendant Trans Union, LLC ("Trans Union").

16.     Republic denied Mr. McNew's applications based on credit information contained in his tri-merged CBCInnovis credit reports.

---

[1.]   http://www.bankrate.com/finance/credit-cards/why-is-good-credit-so-important.aspx

17.     After each denial, Mr. McNew reviewed the tri-merged credit report published by CBCInnovis and found that it included false and inaccurate credit information.

18.     After each credit report review, Mr. McNew sent dispute letters to the CRA's disputing the false and inaccurate information which dispute letters had some success however there remained an uncorrected and false tradeline on his credit reports for which Plaintiff McNew brings this lawsuit.

A.     **Facts as to JPMorgan Chase Bank, N.A.**

19.     Mr. McNew opened a credit card account with Defendant JPMorgan Chase Bank, N.A. ("Chase") in 1992.

20.     Because of financial difficulties Plaintiff McNew and defaulted on the Chase credit card account.

21.     When he was financially able to do so Mr. McNew settled his debt with Chase by paying a settlement amount agreed to by Chase for less than the full amount of the underlying debt Chase claimed was due and owing.

22.     Upon review of his tri-merged credit reports and individual credit reports published by the CRA's, Mr. McNew discovered a different date of first delinquency appearing on each credit report for the Chase tradeline.

23.     The date of first delinquency ("DOFD") is an important date in the life of credit-report tradeline. The DOFD is the same date that the FCRA requires furnishers to provide in order to establish the start of the obsolescence period. In other words, the DOFD determines when negative credit information will fall off of a consumer credit report under 15 U.S.C. § 1681c(a).

24.     The DOFD for the Chase tradeline on Mr. McNew's Equifax credit report was being reported as November 2016.

25.     The DOFD for the Chase tradeline on Mr. McNew's Experian credit report was being reported as September 2016.

26.     The DOFD for the Chase tradeline on Mr. McNew's Trans Union credit report was being reported as October 2016.

27.     Mr. McNew sent multiple dispute letters to the CRA's and a direct dispute letter to Chase on September 4, 2019.

28. Upon receipt of Mr. McNew's dispute, the CRA's each had an affirmative duty under 15 U.S.C. § 1681i(a)(2) to send Chase prompt notice of Mr. McNew's dispute within five (5) business days of receiving each dispute.

29. The CRA's complied with their statutory duties and timely notified Chase of Mr. McNew's disputes.

30. Chase failed to conduct a reasonable investigation into Mr. McNew's dispute concerning the negative credit information Chase is furnishing about Mr. McNew and the paid Chase credit card account.

31. Chase falsely verified the accuracy of the disputed credit information to the CRA's.

32. In particular, after conducting its investigation of Mr. McNew's disputes Chase failed to correct the discrepancies as to the three different DOFD appearing on his credit reports from the CRA's and also failed to note in its investigative results to the CRA's that Mr. McNew had disputed the credit information furnished by Chase.

33. Chase's failure to conduct a reasonable investigation of Mr. McNew's disputes and its failure to note that Mr. McNew had disputed the credit information furnished by Chase, Mr. McNew suffered actual damages in the form injury to his credit, ability to obtain credit, lowered credit score, denial of credit and out-of-pocket expenses related to filing multiple disputes concerning the credit information furnished by Chase.

**B. Facts as to World Finance Company of Kentucky, LLC d/b/a World Finance Corporation, Equifax Information Services, LLC, and Trans Union, LLC**

34. Mr. McNew took out a personal loan with Defendant World Finance Company of Kentucky, LLC d/b/a World Finance Corporation ("WFC") in September 2014.

35. Like the Chase credit card debt, economic difficulties caused Mr. McNew to fall into default on the WFC loan but which he later paid off in full.

36. Upon review of his tri-merged credit reports and individual credit reports published by the CRA's, Mr. McNew discovered that Defendants Equifax Information Services, LLC ("Equifax") and Trans Union, LLC ("Trans Union") were each reporting a false and inaccurate account status for the WFC loan. Further, the date of first delinquency ("DOFD") for the WFC loan on his Trans Union credit report was being reportedly differently than the DOFD for the WFC loan on his Equifax and Experian credit reports.

37. The DOFD for the WFC tradeline on Mr. McNew's Equifax credit report was being

reported as February 2015.

38.     The DOFD for the WFC tradeline on Mr. McNew's Trans Union credit report was being reported as January 2015.

39.     The "status" of the WFC loan on Mr. McNew's Equifax credit report and the "pay status" on Mr. McNew's Trans Union credit report were being falsely and inaccurately reported as 120 days past due.

40.      "Status" on an Equifax credit report and "Pay Status" on a Trans Union credit report both represent the coding for "account status" per the Consumer Reporting Resource Guide ("CRRG"), which is the Metro 2 Code reference guide for furnishers who report credit information to the consumer reporting agencies, like Equifax and Trans Union.

41.     The Consumer Data Industry Association ("CDIA") compiles and publishes the CRRG. Equifax and Trans Union are members of the CDIA.

42.     Per the CRRG, "Account Status" is the reporting field that "[c]ontains the status code that properly identifies the current condition of the account as of the Date of Account Information."

43.     The CRRG further provides that then reporting the "Date of Account Information" furnishers must include "[a]ll account information in the Base Segment, such as Account Status and Current Balance, must be reported *as of* the date in this field." (Bolding and emphasis in original).

44.     According to Mr. McNew's Equifax credit report, the last payment made to WFC (payment in full) was made in February 2016.

45.      According to Mr. McNew's Trans Union credit report, the last payment made to WFC (payment in full) was made on February 9, 2016.

46.     Reporting the current status of the WFC tradeline as 120 past due is false and inaccurate because the status of the WFC loan "as of" February 2016 was paid and closed.

47.     On July 31, 2019 and again on December 4, 2019, Mr. McNew sent a direct dispute letter to WFC.

48.     Mr. McNew sent multiple dispute letters to Equifax and Trans Union.

49.     Upon receipt of Mr. McNew's dispute letter letters, Equifax and Trans Union each had an affirmative duty under 15 U.S.C. § 1681i(a)(2) to send WFC prompt notice of Mr. McNew's dispute within five (5) business days of receiving each dispute.

50.     Equifax and Trans Union complied with their statutory duties and timely notified WFC of Mr. McNew's disputes.

51.     WFC failed to conduct a reasonable investigation into Mr. McNew's dispute concerning the negative credit information WFC is furnishing about Mr. McNew and the paid WFC loan.

52.     WFC falsely verified the accuracy of the disputed credit information to Equifax and Trans Union.

53.     In particular, after conducting its investigation of Mr. McNew's disputes, WFC failed to correct the discrepancies as to the two different DOFD appearing on Mr. McNew's credit reports and failed to correct the "status" of the WFC tradeline on Mr. McNew's Equifax credit report and the "pay status" on Mr. McNew's Trans Union credit report. Further, WFC failed to note in its investigative results to Equifax and Trans Union that Mr. McNew had disputed the credit information furnished by WFC.

54.     WFC's failure to conduct a reasonable investigation into Mr. McNew's disputes resulted in false, negative and inaccurate credit information appearing on Mr. McNew's Equifax and Trans Union credit reports including inconsistent and incompatible DOFDs.

55.     Mr. McNew's post-dispute Equifax credit reports published to Equifax's users and subscribers continued to falsely and inaccurate report the current status of the WFC tradeline as 120 days past due and failed to note that he had disputed the WFC tradeline.

56.     Mr. McNew's post-dispute Trans Union credit reports published to Trans Union's users and subscribers continued to falsely and inaccurate report the current status of the WFC tradeline as 120 days past due and failed to note that he had disputed the WFC tradeline.

57.     WFC's failure to conduct a reasonable investigation of Mr. McNew's disputes and its failure to note that Mr. McNew had disputed the credit information furnished by WFC caused Mr. McNew actual damages in the form injury to his credit, ability to obtain credit, lowered credit score, denial of credit and out-of-pocket expenses related to filing multiple disputes concerning the credit information furnished by WFC.

58.     Equifax failed to conduct a reasonable investigation of Mr. McNew's disputes

because after conducting its investigation of Mr. McNew's disputes, Equifax continued to falsely and inaccurately report and publish to its users and subscribers the "status" of the WFC tradeline on Mr. McNew's Equifax credit report as 120 days past the due date. Further, Equifax failed to note that Mr. McNew had disputed the WFC tradeline.

59.     Equifax's failure to conduct a reasonable investigation of Mr. McNew's disputes and its failure to note that Mr. McNew had disputed the credit information furnished by WFC caused Mr. McNew actual damages in the form injury to his credit, ability to obtain credit, lowered credit score, denial of credit and out-of-pocket expenses related to filing multiple disputes concerning the credit information furnished by WFC.

60.     Trans Union failed to conduct a reasonable investigation of Mr. McNew's disputes because after conducting its investigation of Mr. McNew's disputes, Trans Union continued to falsely and inaccurately report and publish to its users and subscribers the "pay status" of the WFC tradeline on Mr. McNew's Trans Union credit report as 120 days past the due date and failed to note that Mr. McNew had disputed the WFC tradeline.

61.     Trans Union's failure to conduct a reasonable investigation of Mr. McNew's disputes and its failure to note that Mr. McNew had disputed the credit information furnished by WFC caused Mr. McNew actual damages in the form injury to his credit, ability to obtain credit, lowered credit score, denial of credit and out-of-pocket expenses related to filing multiple disputes concerning the credit information furnished by WFC.

**C.     Facts as to LexisNexis Risk Solutions Inc. and CBCInnovis, Inc.**

62.     On June 20, 2017, Midland Funding, LLC ("Midland") sued Mr. McNew in the Laurel District Court of Laurel County, Kentucky under case number 17-C-00768 in an attempt to collect a charged off credit card debt from Mr. McNew (the "Midland Lawsuit").

63.     The Laurel District Court entered default judgment in Midland's favor in the Midland Lawsuit on March 20, 2018.

64.     Mr. McNew paid off the default judgment granted to Midland in full.

65.     On April 15, 2019 Midland entered a notice of satisfaction in the Midland Lawsuit (the "Midland Notice of Satisfaction").

66.     On January 5, 2018 Jefferson Capital Systems, LLC ("JCAP") sued Mr. McNew in the Laurel District Court of Laurel County, Kentucky under case number 18-C-00027 in an attempt to collect a charged off credit card debt from Mr. McNew (the "JCAP Lawsuit").

67.     The Laurel District Court entered default judgment in JCAP's favor in the JCAP Lawsuit on March 15, 2018.

68.     Mr. McNew paid off the default judgment in the JCAP Lawsuit in full and on November 14, 2019 JCAP entered a notice of satisfaction in the JCAP Lawsuit (the "JCAP Notice of Satisfaction").

69.     As stated *supra*, on Janaury 6, 2020 Mr. McNew applied for a home loan or preapproval for a home loan with Republic State Mortgage ("Republic").

70.     In connection with Mr. McNew's application Republic requested, obtained, reviewed, and relied on a tri-merged credit report published by Defendant CBCInnovis, Inc. d/b/a Factual Data ("CBCInnovis") as a Bureau Express Trended Credit Data credit report.

71.     The tri-merged report included public-record information obtained from Defendant LexisNexis Risk Solutions Inc. ("LexisNexis").

72.     Republic denied Mr. McNew's applications based on credit information contained in his tri-merged credit report.

73.     Mr. McNew's January 6, 2020 CBCInnovis credit report included false and inaccurate information furnished and published by LexisNexis in connection with the Midland and JCAP default judgments. In particular, Mr. McNew's January 6, 2020 CBCInnovis credit report falsely and inaccurately reported that the two default judgments were unpaid and still due and owing:

| Public Records | | | | | |
|---|---|---|---|---|---|
| Judgment | BL1 | Judgment | Docket #<br>17C000768 | Amount<br>$703 | Status<br>Filed |
| | | Court name<br>LAUREL DISTRICT COURT/LAUREL KY | Filed<br>03/19/2018 | | Status date<br>05/18 |
| | Comments<br>Plaintiff: MIDLAND FUNDING LLC Defendant: MR CHAD MCNEW | | | | |

| | | | | | |
|---|---|---|---|---|---|
| Judgment | BL1 | Judgment | Docket #<br>18C000027 | Amount<br>$733 | Status<br>Filed |
| | | Court name<br>LAUREL DISTRICT COURT/LAUREL KY | Filed<br>03/15/2018 | | Status date<br>12/18 |
| | Comments<br>Plaintiff: JEFFERSON CAPITAL SYSTEMS LLC Defendant: MR CHAD MCNEW | | | | |

74.     LexisNexis was the source of the false and inaccurate information concerning the Midland default judgment and the JCAP default judgment.

75.     The public-record information LexisNexis published to CBCInnovis was a

"consumer report" within the meaning of the FCRA.

76.     Republic denied Mr. McNew's loan application in whole or in part because the Midland and JCAP default judgments were each still being reported as due and owing in the public-record section of Mr. McNew's portion of the CBCInnovis tri-merged credit report that CBCInnovis published to Republic.

77.      The reporting of the two default judgments as unsatisfied was inaccurate in violation of the FCRA, 15 U.S.C. § 1681e(b) because CBCInnovis failed to follow reasonable procedures to assure maximum possibility accuracy in the preparation of Mr. McNew's credit reports and credit files it publishes and maintains concerning Mr. McNew.

78.     If CBCInnovis had reasonable procedures in place, it would have discovered that Midland had filed the Midland Notice of Satisfaction and JCAP had filed the JCAP Notice of Satisfaction *before* publishing the January 6, 2020 credit report to Republic in connection with Mr. McNew's home-loan application.

79.     CBCInnovis failed to maintain reasonable procedures designed to avoid violations of the FCRA in connection with publishing credit information concerning Mr. McNew and the satisfied Default Judgment.

80.     The reporting of the Midland and JCAP default judgments as unsatisfied was inaccurate in violation of the FCRA, 15 U.S.C. § 1681e(b). LexisNexis failed to follow reasonable procedures to assure maximum possibility accuracy in the preparation of Mr. McNew's credit reports and credit files it publishes and maintains concerning Mr. McNew.

81.     If LexisNexis had reasonable procedures in place, it would have discovered that Midland had filed the Midland Notice of Satisfaction and JCAP had filed the JCAP Notice of Satisfaction *before* publishing the January 6, 2020 credit report to CBCInnovis in connection with Mr. McNew's home-loan application.

## CLAIMS FOR RELIEF

### I.     Claims against JPMorgan Chase Bank, N.A.

82.     The foregoing acts and omissions of Defendant JPMorgan Chase Bank, N.A. ("Chase") violate the FCRA in that, after being informed by the CRA's that Mr. McNew disputed the accuracy of the information it was furnishing to the CRA's concerning Mr. McNew and the Chase tradeline, Chase willfully failed to conduct a proper investigation of Mr. McNew's dispute filed with the CRA's that stated that Chase was furnishing false negative credit information about Mr. McNew and the Chase tradeline.

83.     Chase willfully failed to review all relevant information purportedly provided by Equifax to Chase in conducting its investigation, as required by 15 U.S.C. § 1681s-2(b)(B).

84.     Chase willfully failed to direct the CRA's to update and correct the Chase tradeline as required by 15 U.S.C. § 1681s-2(b)(C) by failing to report the correct DOFD to each of the CRA's and failed to note in its investigative responses that Mr. McNew had disputed the Chase tradeline.

85.     Mr. McNew has a private right of action to assert claims against Chase arising under 15 U.S.C. § 1681s-2(b).

86.     Chase is liable to Mr. McNew for the actual damages he sustained by reason of its willful violations of the FCRA in an amount to be determined by the trier of fact or up to $1,000.00 in statutory damages, whichever is greater, and punitive damages in an amount to be determined by the trier of fact and his reasonable attorney's fees, all pursuant to 15 U.S.C. § 1681n.

87.     Alternatively, Chase is liable to Mr. McNew for the actual damages he sustained as a result of its negligent or grossly negligent violations of the FCRA in an amount to be determined by the trier of fact and his reasonable attorney's fees pursuant to 15 U.S.C. § 1681o.

II.     **Claims against World Finance Company of Kentucky, LLC d/b/a World Finance Corporation**

88.     The foregoing acts and omissions of Defendant World Finance Company of Kentucky, LLC d/b/a World Finance Corporation ("WFC") violate the FCRA.

89.     After being informed by the Equifax and Trans Union that Mr. McNew disputed the accuracy of the information it was furnishing to Equifax and Trans Union concerning Mr. McNew and the WFC tradeline, WFC willfully failed to conduct a proper investigation of Mr. McNew's dispute filed with Equifax and Trans Union which advised that WFC was furnishing false negative credit information about Mr. McNew and the WFC tradeline.

90.     WFC willfully failed to review all relevant information purportedly provided by Equifax to WFC in conducting its investigation as required by 15 U.S.C. § 1681s-2(b)(B).

91.     WFC willfully failed to direct Equifax and Trans Union to update and correct the WFC tradeline as required by 15 U.S.C. § 1681s-2(b)(C) because WFC failed to report the correct DOFD, continued to falsely and inaccurate misreport the status of the WFC tradeline as 120 days past due, and failed to note in its investigative responses that Mr. McNew had disputed the WFC tradeline.

-12-

92.     Mr. McNew has a private right of action to assert claims against WFC arising under 15 U.S.C. § 1681s-2(b).

93.     WFC is liable to Mr. McNew for the actual damages he sustained by reason of its willful violations of the FCRA in an amount to be determined by the trier of fact or up to $1,000.00 in statutory damages, whichever is greater, and punitive damages in an amount to be determined by the trier of fact and his reasonable attorney's fees, all pursuant to 15 U.S.C. § 1681n.

94.     Alternatively, WFC is liable to Mr. McNew for the actual damages he has sustained as result of its negligent or grossly negligent violations of the FCRA in an amount to be determined by the trier of fact, as well as his reasonable attorney's fees, pursuant to 15 U.S.C. § 1681o.

## III.     Claims against Equifax Information Services, LLC

95.     The foregoing acts and omissions of Defendant Equifax Information Services, LLC ("Equifax") violate the FCRA.

### A.     Violation of 15 U.S.C. § 1681i(a)

96.     Equifax violated 15 U.S.C. § 1681i(a) by failing to conduct a reasonable investigation of Mr. McNew's disputes concerning the WFC tradeline.

97.     As a result of Equifax's failure to conduct a reasonable investigation of Mr. McNew's dispute Equifax continued to inaccurately report that the current payment status of the WFC tradeline was 120 days past the due date.

98.     Mr. McNew suffered actual damages in the form of a lowered credit score and denial of credit, frustration, emotional upset and distress.

99.     Equifax's conduct, actions and inactions were willful rendering Equifax liable under 15 U.S.C. § 1681n for actual, statutory and punitive damages and Plaintiff's reasonable attorney's fees and costs.

100.     Alternatively, Equifax's conduct, actions and inactions were negligent rendering Equifax liable Plaintiff McNew under 15 U.S.C. § 1681o for his actual damages, attorney's fees and costs.

### B.     Violation of 15 U.S.C. § 1681c(f)

101.     Equifax's failure to note that Mr. McNew had disputed the WFC tradeline rendered the information on Mr. McNew's credit reports that Equifax published to third-party users

"incomplete and inaccurate."

102.    As a result of Equifax's failure to note that Mr. McNew had disputed the WFC tradeline in the credit reports it published to third-party users Mr. McNew suffered actual damages in the form of a lowered credit score, denial of credit, emotional upset and distress.

103.    Equifax's conduct, actions and inactions were willful rendering Equifax liable under 15 U.S.C. § 1681n for Plaintiff's actual damages, statutory damages, punitive damages, attorney's fees and costs.

104.    Alternatively, Equifax's conduct, actions and inactions were negligent rendering Equifax liable under 15 U.S.C. § 1681o for Plaintiff's actual damages, attorney's fees and costs.

## IV.    Claims against Trans Union, LLC

105.    The foregoing acts and omissions of Defendant Trans Union, LLC ("Trans Union") violate the FCRA as follows:

### A.    Violation of 15 U.S.C. § 1681i(a)

106.    Trans Union violated 15 U.S.C. § 1681i(a) by failing to conduct a reasonable investigation of Mr. McNew's disputes concerning the WFC tradeline.

107.    As a result of Trans Union's failure to conduct a reasonable investigation of Mr. McNew's dispute, Trans Union continued to inaccurately report that the current payment status of the WFC tradeline was 120 days past the due date. causing Mr. McNew to suffer actual damages in the form of a lowered credit score, denial of credit, emotional upset and distress.

108.    Trans Union's conduct, actions and inactions were willful rendering Trans Union liable under 15 U.S.C. § 1681n for Plaintiff's actual damages, statutory damages, punitive damages, attorney's fees and costs.

109.    Alternatively, Trans Union's conduct, actions and inactions were negligent rendering Trans Union liable under 15 U.S.C. § 1681o for Plaintiff's actual damages, attorney's fees and costs.

### B.    Violation of 15 U.S.C. § 1681c(f)

110.    Trans Union's failure to note that Mr. McNew had disputed the WFC tradeline rendered the information on Mr. McNew's credit reports that Trans Union published to third-party users "incomplete and inaccurate."

111.    As a result of Trans Union's failure to note that Mr. McNew had disputed the WFC tradeline in the credit reports it published to third-party users, Plaintiff suffered actual damages in the form of a lowered credit score, denial of credit, emotional upset and distress.

112.    Trans Union's conduct, actions and inactions were willful rendering Trans Union liable under 15 U.S.C. § 1681n for Plaintiff's actual damages, statutory damages, punitive damages, attorney's fees and costs.

113.    Alternatively, Trans Union's conduct, actions and inactions were negligent rendering Trans Union liable under 15 U.S.C. § 1681o for Plaintiff's actual damages, attorney's fees and costs.

## V.    Claims against CBCInnovis, Inc. dba Factual Data

114.    The foregoing acts and omissions of Defendant CBCInnovis, Inc. d/b/a Factual Data ("CBCInnovis") violate the FCRA.

115.    CBCInnovis, Inc. violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of consumer reports it published to its subscribers and users of its consumer reports concerning Mr. McNew and the status of the Midland and JCAP default judgments in the public-record section of its credit reports.

116.    CBCInnovis was on clear notice that the failure to update public records with respect to judgments was problematic for LexisNexis Risk Solutions, Inc., which was the source of the false and inaccurate information concerning the Midland and JCAP default judgments since Numerous lawsuits in this and other jurisdictions concerning this same issue have been filed against CBCInnovis and other CRA's that rely on LexisNexis for public-record information for reporting false and inaccurate public-record information.

117.    CBCInnovis's conduct, actions and inactions were willful rendering CBCInnovis liable under 15 U.S.C. § 1681n for Plaintiff's actual damages, statutory damages, punitive damages, attorney's fees and costs.

118.    Alternatively, CBCInnovis's conduct, actions and inactions were negligent rendering CBCInnovis liable under 15 U.S.C. § 1681o for Plaintiff's actual damages, attorney's fees and costs.

## VI.    Claims against LexisNexis Risk Solutions Inc.

119.    The foregoing acts and omissions of Defendant LexisNexis Risk Solutions Inc.

("LexisNexis") violate the FCRA in that, by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of consumer reports it published to its subscribers and users of its consumer reports concerning Mr. McNew and the status of the Midland and JCAP default judgments, LexisNexis violated 15 U.S.C. § 1681e(b).

120.    LexisNexis was on clear notice that the failure to update public records with respect to judgments was problematic since numerous lawsuits in this and other jurisdictions concerning this same issue have been filed against LexisNexis and other CRA's that rely on LexisNexis for public-record information for reporting false and inaccurate public-record information therefore LexisNexis's conduct, actions and inactions were willful rendering LexisNexis liable under 15 U.S.C. § 1681n for Plaintiff's actual damages, statutory damages, punitive damages, attorney's fees and costs..

121.    Alternatively, LexisNexis's conduct, actions and inactions were negligent rendering LexisNexis liable under 15 U.S.C. § 1681o for Plaintiff's actual damages, attorney's fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Chad McNew requests that the Court grant him the following relief:

1.    Award the maximum amount of statutory damages;

2.    Award Plaintiff his actual damages;

3    Award Plaintiff punitive damages under 15 U.S.C. § 1681n;

4.    Award Plaintiff his Attorney's fees, litigation expenses and costs;

5.    A trial by jury; and

6.    Any other relief to which Plaintiff may be entitled.

Submitted by:

/s/ James R. McKenzie
*James R. McKenzie Attorney, PLLC*
115 S. Sherrin Ave. Suite 5
Louisville, KY 40207
Tel:    (502) 371-2179
Fax:    (505) 257-7309
jmckenzie@jmckenzielaw.com

James H. Lawson
*Lawson at Law, PLLC*
115 S. Sherrin Avenue, Suite 5
Louisville, KY 40207
Tel:     (502) 473-6525
Fax:     (502) 473-6561
james@kyconsumerlaw.com